No. 36,018

JAMES A. THOMPSON, *Appellee,* v. SWENSON CONSTRUCTION COMPANY and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, *Appellants.*

(145 P. 2d 166)

Opinion filed January 22, 1944.

James K. Cubbison, of Kansas City, argued the cause, and Blake A. Williamson and Lee Vaughan, both of Kansas City, were on the briefs for the appellants.

A. J. Herrod, of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by·

WEDELL, J.: This was a workmen's compensation case. Claimant prevailed and respondent and its insurance carrier appeal..

The sole issue is whether written claim for compensation was filed in time. The district court made no independent findings of fact but simply sustained and affirmed the findings and award of the commissioner. The commissioner made a general finding the written claim was filed in time. The theory, or theories, upon which he made that finding will appear presently.

Claimant was a carpenter in the employ of Swenson Construction Company. Employers Mutual Liability Insurance Company was the insurance carrier. On February 28, 1942, claimant sustained an accidental injury to his left leg and ankle. Following his injury he received medical care and attention from a number of respondent's doctors. The testimony of the last two doctors will receive attention later. On May 18, 1942, claimant returned to work for the respondent company and did sweeping and cleaning-up work. It is not claimed that such lighter work was recommended as a cure. Claimant contends that by reason of the weakness of his ankle and limited motion therein he cannot now perform the work incident to his previous occupation as a carpenter. The written claim for compensation was not filed until February 24, 1943. The pertinent portion of G. S. 1941 Supp. 44-520a reads:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, or by delivering such written claim to him by registered mail within one hundred twenty days after the accident, or in cases where compensation payments have been suspended within one hundred twenty days after the date of the last payment of compensation; . . ."

It is claimant's contention the statute had been tolled by virtue of medical treatments he had received since his injury and that there was no period of 120 days between the date of the accident and filing of his claim when he did not receive medical attention and care from some one of respondent's doctors. He claimed to have received treatment from Dr. Francis J. Nash between the last of November and Christmas of 1942, and from Dr. W. J. Feehan on December 26, 1942. These doctors both denied positively they had treated claimant on those dates or on any other dates within 120 days prior to February 24, 1943.

Doctor Feehan testified he had received a copy of a letter dated December 23, 1942, written by the insurance carrier to claimant asking claimant to report to him for an examination only and that he made the examination pursuant to that letter. The pertinent part of the letter reads:

"It is requested you appear at your earliest convenience at the office of W. J. Feehan, Huron Building, Kansas City, Kansas, for an examination only of your left leg and ankle. You understand that we are not nor Dr. Feehan at this time tendering or rendering any form of treatment. This visit to Dr. Feehan for this examination is therefore independent of any treatment we may have rendered you in the past."

Appellee asserts there is no evidence in the record that claimant received this letter. It is true we find no direct evidence he received the letter. Neither is there direct evidence he did not receive it. Claimant does state at one place, "I was sent by a representative of the company to all the doctors I have mentioned." That statement is, of course, not a denial that he received the above letter. In any event we take cognizance of the fact claimant reported to Doctor Feehan on December 26, 1942, three days after the date of the letter.

The pertinent portion of Doctor Feehan's testimony was:

"The last treatment was given August 28th, 1942. I saw him after that on December 26, 1942. He came in for an examination and report was all. I did not render him any form of treatment of any kind on that date. . . I conducted my examination in accordance with that letter and made a rating of permanent disability of the left ankle of Mr. Thompson at that time giving him a rating of 10% permanent, partial disability of the left ankle. The examination on that date consisted of inspection, palpation and observation of the foot, and the measurements of the amount on movement and the size of the foot."

Claimant's testimony with respect to what Doctor Feehan did on December 26 was:

"He took my ankle, just as I say, twisted it around and tried to work it that way, up this way and down, and took my temperature, and measured my ankle. He told me there wasn't anything more to do for it."

The substance of Doctor Nash's testimony was:

The last treatment he gave claimant was August 11, 1942. He might have done some little thing on September 19 in the way of telling him what to do but he did very little in the way of treatment after August 11.

Doctor Nash further testified:

"His left ankle was injured and the last I saw Mr. Thompson was the 12th of October, 1942. I am positive I have not seen him since. I keep a record of all the visits he made professionally and that date is the date of his last visit. On that date I did not render him any form of treatment. On that date he came in just for an evaluation of his disability and that is all he came in for. I did not do anything but make the examination of his ankle."

Touching the examination on October 12 Doctor Nash in substance further testified:

He was requested by the insurance carrier to make a final evaluation of claimant's disability and to send his statement for services. He made the last charge for services on his books October 12, 1942, which was for the examination and not for treatment. He was positive he never saw claimant as a patient after that date and that he did not thereafter advise claimant to wear an elastic band on his ankle.

Touching Doctor Nash's services claimant testified:

"At Dr. Nash's, after Thanksgiving, when I called at his office and I removed my shoe, he rubbed my ankle and tried to straighten it out, which he suggested before, that they take me to the hospital and try to put the ankle through all the motions like it should be, break it loose. He told me nothing could be done with my ankle, the same as Dr. Feehan did."

Claimant in substance further testified:

On the previous advice of Doctor Nash he had worn an elastic band on his ankle at times when he had twisted it. Doctor Nash previously had advised him the wearing of the band on such occasions probably would keep the ankle from swelling. On his last visit Doctor Nash asked him whether he was still wearing the band and he told him he was not but that he was carrying it in his lunch box in order to have it available in the event he needed it.

The commissioner, according to what is said in his history of the case, appears to have made his finding the claim was filed in time upon the fact that Doctor Feehan made an examination of

claimant on December 26, 1942, and perhaps also upon what he found Doctor Feehan had done on that occasion. The history report of the commissioner states:

"The facts in connection with whatever Dr. Feehan did on December 26, 1942, do not seem to be in dispute. Dr. Feehan made an examination of the foot and took the claimant's temperature. Whether this attention kept the statute tolled is a question of law. Section 44-510 provides that it is the duty of the employer to provide the services of a physician or surgeon, and such medical, surgical and hospital treatment, etc. Did Dr. Feehan perform either service or provide treatment? Our Supreme Court has held many times that the furnishing of medical aid constitutes payment of compensation, and therefore tolls the statute. The latest case is *Taylor v. Missouri Pacific*, 146 Kan. 668. In this case the case of *Richardson v. National Refining Company*, 136 Kan. 724, is cited. In that case the term 'medical aid' is used. In the Taylor case the terms 'Medical care' and 'attention' are used. With the statutory law cited and the substantive law cited, we have the following terms: 'Service, treatment, medical aid, medical care, and medical attention.' In the opinion of this Commissioner what Dr. Freehan did on December 26, 1942, does come within one of the terms mentioned, and the statute of limitations was therefore tolled and this claim is found to have been made within time. It has always been a matter of dispute as to whether or not an examination requested by the employer constituted such an action as would toll the statute of limitations for making written claim for compensation. It seems to this Commissioner that an examination requested by the employer does toll the statute, because examinations are made to determine whether or not medical science can be of any assistance. Consequently it is the furnishing of service or treatment within the statute."

In view of the letter asking claimant to report to Doctor Feehan only for an examination, the fact he did report and in view of what Doctor Feehan did, we do not believe the record is fairly susceptible to the interpretation that Doctor Feehan administered treatment and care for the purpose of curing or relieving claimant of the effects of his injury as contemplated by G. S. 1935, 44-510. On the contrary, we think a more reasonable interpretation of that portion of the record is that an examination was intended to be made and was made by Doctor Feehan only for the purpose of evaluating claimant's disability.

It is true it is the duty of the employer to provide the services of a physician or surgeon and medical, surgical and hospital treatment, etc., in an amount and in the manner designated by the statute in order to cure and relieve the workman from the effects of his injury. (G. S. 1941 Supp. 44-510.) There is no contention here the employer had not fully complied with that requirement. Moreover, the law provides that after the injury the employee shall, "upon request

of the employer, submit himself for examination at any reasonable time and place, to any one or more reputable physicians or surgeons selected by the employer, and shall so submit himself for examination thereafter at intervals during the pendency of his claim for compensation, upon request of the employer . . ." (G. S. 1935, 44-515.)

G. S. 1935, 44-516, reads:

"In case of a dispute as to the injury the committee, arbitrator or commission as hereinafter provided shall upon request of either party employ one or more neutral physicians or surgeons not exceeding three in number who shall be of good standing and ability, whose duty it shall be to make such examinations of the injured persons as the committee, arbitrator or commission may direct."

G. S. 1935, 44-518, further provides:

"If the employee refuses to submit himself for examination upon request of the employer as provided for in section 15 [44-515] of this act, or if the employee or his physician or surgeon unnecessarily obstructs or prevents such examination by the physician or surgeon of the employer, the employee's right to payment for compensation shall be and remain suspended until he shall submit to examination and until such examination shall have taken place, and no compensation shall be payable under this act during the period of suspension: *Provided further,* That in the event the employee shall refuse to submit himself to examination while any proceedings are pending for the purpose of determining the amount of compensation due, said proceedings shall be dismissed upon showing being made of said refusal of said employee to submit himself for examination."

Appellee cites no authorities on the proposition that an examination of a workman required by the employer under these or similar statutes of other states for the purpose of ascertaining an evaluation of the workman's disability tolls the statute. Our independent research has revealed no such decisions. In our opinion such a construction would result in hardships and disadvantages to the workman, employer and insurance carrier. We do not believe the lawmakers intended the statutes should so operate.

The workmen's compensation act was not enacted to encourage litigation. One of its primary purposes was to stimulate the settlement of compensation disputes. One of the most frequent controversies arises over the amount required to compensate for an injury. The answer frequently, as here, depends upon the extent of the employee's disability. An employer, under these statutes, is entitled to be advised on that subject before he makes an offer of settlement or accepts such offer made by an employee. An examination may disclose the employer's estimate of the workman's disability was

entirely too low. When the employer and insurance carrier are advised concerning the actual extent of disability by physicians of their own choice offers of settlements are frequently increased. On the other hand if the claim of the extent of disability is found by an examination to be exorbitant the employer and insurance carrier are entitled to be advised of that fact. In that event the claimant's demands frequently become more reasonable. So construed the statutes work to the mutual advantage of all parties. Construed otherwise they work to their detriment, which we think is contrary to their purpose and intent. These mutual advantages would be greatly minimized, if not entirely destroyed, if a mere examination were construed to constitute treatment and care. An employer or insurance carrier would seldom, if ever, take advantage of the salutary and mutually beneficial provisions of statutes providing for examinations if they were to be penalized for doing so. We therefore conclude a mere examination of an injured employee required by the employer or his insurance carrier and made solely for the purpose of evaluating disability does not toll the statute requiring written claim for compensation to be filed within a fixed period.

What has been said thus far, however, pertains only to Doctor Feehan's examination and alleged treatment on which the commissioner's finding or ruling appears to have been based. The commissioner made no finding concerning the treatment claimant said he had received from Doctor Nash after Thanksgiving in 1942. The only appeal to this court is from findings and orders of the district court on questions of law. (G. S. 1935, 44-556.) The district court made no independent findings of fact. It merely sustained and affirmed the findings and award of the commissioner. We therefore have no way of knowing whether the district court believed or disbelieved claimant's testimony that he had a conference with and was treated by Doctor Nash after Thanksgiving in 1942. Doctor Nash, as previously indicated, absolutely denied any visit by claimant after October 12, 1942, and that date was not within the 120-day period prior to the filing of the written claim.

It is the duty of the commissioner to hear the evidence on all branches, that is, on all points involved, and to make a *ruling* thereon. Only after this is done is the case subject to appeal to the district court. (*Willis v. Skelly Oil Co.*, 135 Kan. 543, 547, 11 P. 2d 980; *Brown v. Shellabarger Mill & Elev. Co.*, 142 Kan. 476, 489, 50 P. 2d 919.) The commissioner in this case heard the evidence and made a finding or ruling the claim was filed in time. He

therefore discharged his duty and the case was subject to appeal to the district court. We have already indicated we do not agree with the basis of the commissioner's finding or ruling that the claim was filed in time. That fact, however, does not end our responsibility. As previously stated the concern of this court is with findings or rulings of the district court. We have treated the basis for the finding or ruling of the commissioner in this case only because the district court approved that finding or ruling and because it may have done so upon the same theory advanced by the commissioner. The commissioner's findings or ruling was based upon the alleged treatment by Doctor Feehan.

While the district court approved the finding the claim was filed in time it made no specific finding with respect to what Doctor Nash may have done. Failure to make such a specific finding does not relieve this court from the responsibility of examining the record before us to see whether there is competent evidence to support the finding the claim was filed in time. We must therefore consider claimant's testimony concerning his last visit with Doctor Nash although the commissioner and district court both may have disbelieved claimant's testimony concerning it. On appeal this court is concerned only with testimony which supports, or tends to support, a finding and not with testimony which is contrary thereto. (*Davis v. Julian*, 152 Kan. 749, 754, 107 P. 2d 745.)

It is, of course, well established that the furnishing of medical aid or treatment constitutes payment of compensation within the meaning of G. S. 1935, 44-510. (*Taylor v. Missouri Pac. Rld. Co.*, 146 Kan. 668, 670, 73 P. 2d 62.) Claimant's testimony, previously quoted, concerning his visit to Doctor Nash after Thanksgiving Day of 1942, while not as strong as it might be, discloses, or tends to disclose, that Doctor Nash gave claimant's ankle the same kind of manipulation, or treatment similar to that which he previously had recommended should be given claimant at the hospital. We therefore cannot say there is no competent evidence in the record before us to support the finding or ruling the claim was filed in time. In view of this conclusion it is unnecessary to discuss various other decisions cited by either party.

In fairness to the district court it should be stated that a careful search of our compensation act discloses no statute which compels the district court to make detailed findings of fact which resolve the disputed testimony of witnesses. That court does not see or hear the witnesses. It simply reviews the transcript of the record made

by the commissioner. It appears all that court is compelled to do is to make a finding or order on each branch of the case, that is, on every question of law involved. (G. S. 1935, 44-556.) The court did that in this case by sustaining and affirming the finding of the commissioner that the claim was filed in time. We cannot assume the court disbelieved claimant's testimony concerning Doctor Nash's treatment after Thanksgiving in 1942.

The judgment is affirmed.

HARVEY, J. (concurring specially): I concur in the order affirming the judgment of the trial court, but wish to state my reasons as follows: The pertinent statute (G. S. 1935, 44-510) reads:

"The amount of compensation under this act shall be: (1) *Treatment and care of injured employees.* It shall be the duty of the employer to provide the services of a physician or surgeon and . . ."

I think what Doctor Fechan did on December 26, 1942, was "services of a physician or surgeon," concededly furnished by the employer. I think the question of whether the doctor at that time gave or prescribed additional beneficial treatment for claimant is beside the point. It was valuable both to the employer and to the employee for an examination to be made so that the extent of claimant's permanent injuries might be known, and also that it might be known whether additional treatment would be valuable to him. If it is to be said that this does not constitute compensation within the meaning of the law the legislature should say it, and not this court. Therefore, I cannot agree with paragraphs 1, 2 and 3 of the syllabus as they are worded.

The trial court found that the "findings and award of the workmen's compensation commission should be sustained and affirmed" and rendered judgment accordingly. The pertinent finding of the commissioner reads:

"It is found from the evidence that the claimant herein served written claim for compensation upon his employer within the time required by law. . . ."

I think it cannot be said from the record in this case that the finding is not sustained by substantial, competent evidence.

SMITH, J., concurs in the foregoing opinion of Mr. Justice Harvey.

THIELE, J. (concurring specially): I am in full accord with paragraphs 1, 2 and 3 of the syllabus and what is said in the opinion with respect thereto.

As to paragraph 4 and the corresponding part of the opinion I feel impelled to agree but only for the following reasons: Without going into details, it is noted that G. S. 1935, 44-549, provides that the award, finding, decision or order of an examiner when approved, confirmed and filed by the commissioner shall be deemed to be the award, finding, decision or order of the commissioner. No particular form of findings or award is specified or required. Although on appeal a transcript of the evidence and proceedings as presented, had and introduced before the commission is before the district court (G. S. 1935, 44-556), in the instant case the district court merely approved the award made by the commissioner, and made no independent or additional findings.

Following what seems to be the usual practice the award as filed in this case consists of "Stipulations," "History," "Findings" and "Award." In the "History" there is no statement that claimant received any treatment from Doctor Nash within 120 days preceding February 24, 1943, or within time. In the "Findings" is the mere statement the claim was filed in time. Insofar as the original award is concerned, it is quite obvious, as shown in the opinion, this was based on the proposition that what Doctor Feehan did was medical treatment within the statute and which we hold was not. However, there is in the evidence which went before the district court a statement by claimant that after Thanksgiving Doctor Nash treated him. Solely because this evidence tends to support the award, I agree to affirmance.

It seems to me the statute should be amended to require the commission to find specifically all facts, other than those stipulated, necessary to be found to support an award. Simply to find a claim is filed in time, without further specification, comes close to stating a conclusion of law and not of fact.

DAWSON, C. J. (dissenting from the net result): I concur in the rules of law announced in paragraphs 1, 2 and 3, of the syllabus but dissent from rule stated in paragraph 4. I can discern no substantial evidence of medical treatment chargeable to the employer as part of the claimant's compensation allowed by the statute, G. S. 1935, 44-510, which would toll the statutory time of 120 days allowed by G. S. 1941 Supp. 44-520a, within which a written claim for compensation must be served on the employer. In my opinion the judgment should be reversed.