No. 33,768

J. J. SHROUT, *Appellee,* v. SHELLMAN LEWIS, *Appellant.*

(77 P. 2d 973)

Opinion filed April 9, 1938.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellant.

*Earl C. Moore,* of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action under the workmen's compensation act. The district court rendered judgment in favor of the claimant, and respondent appeals.

The question presented is whether the activity in which respondent was engaged when claimant was injured was of such a nature and extent as to bring respondent within the trade or business of "building work," as that term is defined in the workmen's compensation act.

Claimant suffered the loss of the thumb on his right hand. He also suffered a five-percent disability in the use of his right hand. Respondent had been a farmer. Seventeen years ago he moved to the city of Wichita. At the time of the trial he owned a farm in Oklahoma. About seven years ago he built an apartment house in the city of Wichita, consisting of eight apartments. The apartments were rented. It appears the contract for the construction of this apartment was let to a contractor. In March of 1936 he commenced the erection of a duplex which was completed in the month of June. In July of 1936 he sold his home, and in September of the same year started to build a new home. It was completed about January 1, 1937. Claimant started working for respondent on this home in September, 1936. He helped shingle the house, lay the floors and assisted in the painting of the inside of the house. About the middle of January, 1937, respondent started the remodeling of basement apartments in the duplex. That work was completed about February 1, 1937. It was in the remodeling work of the duplex and on January 20, 1937, that claimant was injured. He had been employed directly by respondent to assist a carpenter who acted in the capacity of a foreman. Claimant was employed to do anything which might be necessary to assist the carpenter in getting the remodeling job completed. A motor-operated saw was in need of adjustment and plaintiff was injured while assisting the carpenter in the work of adjusting the saw. The work of both the claimant and the carpenter appears to have been performed as day labor. Respondent

owned other vacant lots, and on April 15, 1937, obtained a permit from the city to build another duplex. This duplex was to consist of a family residence and was to be constructed at a cost of approximately $4,000.

That the remodeling work at which claimant was employed constituted "building work," is clear. G. S. 1935, 44-508 (*f*), provides:

"'Building work' means any work in the erection, construction, extension, decoration, *alteration, repair* or demolition of any buildings or structural appurtenances." (Italics inserted.)

Where the work is "building work" the act applies regardless of the number of employees (G. S. 1935, 44-507) if the facts otherwise bring the matter within the terms of the act. In order to bring an employer within the act it is not enough that the work at which the laborer is employed is covered by the act, but it is also necessary that the work shall be a part of his employer's trade or business. (G. S. 1935, 44-503, 44-505; *Setter v. Wilson,* 140 Kan. 447, 449, 37 P. 2d 50.) In other words, it is the purpose of workmen's compensation acts to place the burden of compensation for accidents to employees upon the industry rather than upon the individual employer.

What was respondent's trade or business? He insists he was a farmer. Claimant contends respondent's activity in the repair of his various buildings, the alteration and remodeling thereof, and the time and attention involved in the initial construction thereof, was sufficiently extensive to characterize respondent's trade or business as that of a builder. These properties, except his residence, were rental properties. As to the time respondent devoted to repairs, collection of rents after their completion, and whatever might be necessary for their management, his testimony varied. The early part of the record discloses the following:

"Q. How much of your time do you spend on the farm? A. Half of my time, when I ain't got nothing else here in town.

"Q. The other half you spend looking after your properties . . . is that right? A. Just whatever happens to come up.".

Later he testified to the effect that the management, operation and repairs of the city properties did not require one half of his time, but the exact portion thereof was not definitely fixed. The record, however, discloses that about eight months of the year 1936 were occupied with the actual construction of buildings. The work in 1936 was done by a foreman and day laborers, all of whom were employed directly by respondent. While respondent did not specifi-

cally state he was the supervisor of the work, his testimony was subject to that interpretation.

Can it fairly be said respondent's trade or business was that of a farmer and that he was outside of the act irrespective of his activity in the building trade? Or would it be more nearly in keeping with reason and fairness to say his activity in "building work" was sufficiently extensive to bring him within the act as one who was also engaged in the building trade? Does it follow from the mere fact he owned a farm and gave of his time to its supervision that he was necessarily precluded from having another trade or business? We think not. Our act in no wise requires that his activity be limited exclusively to a hazardous trade or business in order that he might be amenable to the act. Where the act does not so limit an employer's trade or business he may come within the act as to certain of his trades or businesses, and not as to others. In other words, he may have more than one trade or business. (*Davis v. Industrial Com.*, 297 Ill. 29, 130 N. E. 333.) Supposing respondent had also been extensively engaged in the drilling of oil or gas wells and had divided his time equally between the three activities, and claimant had been injured in the latter, instead of in the work of remodeling the duplex, could respondent reasonably have contended he did not come within the act on the theory he was a farmer or a builder? We think not. Supposing respondent had done the same amount of building and remodeling in the year 1936, and until the middle of February of 1937, for other owners of property rather than for himself, would it be logical or reasonable to say his trade or business during such period had not been that of a builder? Obviously not. The fact he was the owner of these buildings and received his compensation in the form of rents rather than in the form of other compensation, would not relieve him from liability under the act. (*Storrs v. Industrial Comm.*, 285 Ill. 595, 597, 121 N. E. 267.)

What constitutes one's trade or business? The answer must of necessity depend upon the facts and circumstances in each particular case. It must be obvious that in the very nature of the situation no arbitrary or definite line of demarcation can be drawn in order to determine precisely what an individual's trade or business may be where he is engaged in more than one enterprise. For this reason it is only natural that complete harmony in the decisions is not to be expected. And this would be true if the provisions of the various compensation acts were identical, which of course they are not. In 50 A. L. R. 1176, is contained an annotation on the subject, "Owner-

ship of leased or rented property as constituting business, trade, occupation, etc., within Workmen's Compensation Acts." That annotation was carefully considered by this court in the case of *Setter v. Wilson,* 140 Kan. 447, 37 P. 2d 50, and in commenting thereon we said:

"It would appear therefrom that the weight of authority is that the mere owning of a house, maintaining it and keeping it in repair so that it may produce an income, is not sufficient to constitute a trade or business, but such transactions, at most, amount only to a trade or business, within the meaning of the compensation act, *when they are carried on to such an extent as to require a substantial and habitual devotion of time and labor to their management and operation."* (p. 450.) (Italics inserted.)

Respondent insists the decision in the Setter case precludes a recovery in the instant case. In that view we are unable to concur. The facts are strikingly dissimilar. In the Setter case, Mrs. Wilson owned a two-story building in the city of Humboldt, which was in the process of being repaired when the employee was killed. The owner derived a part of her income from a portion of the building. It was simply being repaired to maintain it. In that case a distinction was clearly indicated which is pertinent in the instant case. It was there said:

*"In the case under consideration there is no evidence that the owner of the property was engaged in the* business *of acquiring, improving and holding real estate as a means of livelihood,* for the evidence went no further than that she derived a part of her income from the leased premises, and that when it needed repairs she had them made." (p. 450.) (Italics inserted.)

In the case before us respondent was not merely engaged in the collection of rents and the repair of buildings which he owned and which had been constructed prior to the time he left the farm. Nor had he been engaged only in remodeling work. True, claimant was injured during the remodeling work on one of the buildings, but respondent's entire building activity must be considered in determining his trade or business. He had been actively engaged in the enterprise of having buildings constructed as a means of investment for revenue. He was preparing to build another. The actual construction work in 1936 covered a period of approximately eight months. The operation and management of the properties, after completion, required a substantial and habitual devotion of time and labor. Under all these circumstances we cannot say the evidence was insufficient to support the ruling of the trial court.

Respondent cites *Kaplan v. Gaskill,* 108 Neb. 455, 187 N. W.

943; *Billmayer v. Sanford,* 177 Minn. 465, 225 N.W. 426, and *Dancy v. Abraham Bros. Packing* (Tenn.), 102 S. W. (2d) 526. The facts in the Kaplan case were more nearly similar to those in our Setter case. The cases cited are all clearly distinguishable from the instant case on several grounds. It is sufficient to say that the first two cases cited involved small repair jobs, while the latter involved the erection of a small shelter house around a sprinkling system. In none of them was the employer as extensively engaged in building work as was respondent in the instant case. In none of them had the employer constructed buildings for rental purposes. It is noteworthy that in the Billmayer case the importance of the extent of an employer's activity in simply owning, letting and repairing of properties, was recognized. It was said:

"Did the relator have a business or occupation other than that of a housewife? A person may engage in more than one business or occupation. The compensation act does not contemplate that one can be engaged in only one usual business. But did the owning and letting of these houses constitute a business or occupation?

"We have held to the contrary, under similar circumstances, where only one building was involved. *Sink v. Pharoah,* 170 Minn. 137, 212 N.W. 192, 50 A. L. R. 1173. *Such conduct may reach such proportions as to require an affirmative conclusion (Storrs v. Industrial Comm.,* 285 Ill. 595, 121 N.E. 267) . . . (p. 466.)" (Italics inserted.)

The judgment must be affirmed. It is so ordered.