No. 36,706

O. H. Giltner, *Appellant,* v. H. P. Stephens, *Appellee.*

(180 P. 2d 288)

Harry W. Fisher, judge pro tem.
Opinion filed May 3, 1947.

*Jack L. Goodrich* and *A. L. Foster,* both of Parsons, were on the briefs for the appellant.

*Elmer W. Columbia,* of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.,* both of Parsons, were with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal in this case is by the plaintiff from rulings on the pleadings, including the overruling of a demurrer filed by the plaintiff to the defendant's amended answer. The defendant did not file a cross-appeal but contends in this court that the plaintiff's demurrer to the amended answer searches the entire record and that this court, therefore, should consider the defendant's demurrer to the plaintiff's third amended petition. The defendant also asserts that examination of such petition reveals that the plaintiff's cause of action, if any, arose under the workmen's compensation act and that consequently, the district court did not have original jurisdiction of the action and that the question of jurisdiction can be properly raised in and considered by this court. The questions presented necessitate examination of the pleadings.

Such an examination reveals that the plaintiff alleges that the defendant is the owner of a large dairy and stock farm; that defendant orally hired the plaintiff as a carpenter and agreed to provide him with coservants for the purpose of constructing a large dairy barn on the farm; that defendant provided the plaintiff with an incompetent coservant named McDowell, who was totally deaf and emotionally unstable; that plaintiff advised the defendant as to the incompetency of McDowell but that the defendant failed to replace the employee. The petition further alleges that the defendant personally began work on the job on December 4, 1943, and that the defendant was not skilled in construction work and was not competent to perform any services on the job other than that of a common laborer, which fact was unknown to the plaintiff but well known to the defendant; that on said date the plaintiff and the defendant and the incompetent coservant attempted to raise a girder weighing 1,500 pounds by means of a derrick or gin pole and that in the course of the attempt the defendant and the incompetent coservant pulled the block rope and raised the girder about nine feet above the ground and four or five inches above the wall upon which it was to be placed; that plaintiff told the defendant and the coservant to "hold it" and started after a step-

ladder on which the plaintiff intended to climb and place the girder in proper position before it was lowered upon the wall; that as the plaintiff walked toward the ladder the defendant yelled, "look out"; that plaintiff looked up and saw the end of the rope which the defendant and the coservant had been holding, racing up and through the top pulley; that the girder fell suddenly to the ground and struck the plaintiff on his left leg above the knee and that as a result it was necessary to amputate the plaintiff's leg. The petition also alleges "That the operation and control of said derrick and gin pole at the time said girder fell, was wholly and exclusively within the control of defendant . . . That there was no mechanical defect or failure of any kind or character . . . That the rope . . . did not break, did not come untied . . . That while said girder was suspended in a stationary position, the ratio of the block and tackle was such that one man could, by holding on to said rope at the time and place the defendant and his servant . . . were holding same, have held said girder stationary." The petition continues by alleging that the plaintiff has exercised diligence in determining what the defendant and the coservant did or failed to do but has been unable to ascertain the same and "That said defendant, personally, and by his [said] employee, carelessly, negligently, recklessly, and incompetently turned loose of the rope holding said girder so that it fell upon plaintiff, injuring him as above set forth." The petition also alleges specifically negligence on the part of the defendant as follows: (1) By hiring the coservant when the defendant knew or should have known that he was incompetent; (2) by retaining the servant on the job after having had full knowledge of his incompetency; (3) by the defendant personally undertaking to assist the plaintiff when the defendant had no knowledge or training in construction work, and was incompetent; (4) by reason of the defendant and the coservant having turned loose of the rope and thereby causing the girder to fall; and (5) by reason of the defendant's failure to provide competent coservants. Such acts of negligence on the part of the defendant are alleged to be the direct and proximate cause of the plaintiff's injuries. The petition concludes by alleging items of damage aggregating $15,864.29.

The amended answer alleges a different factual story. The demurrer of the plaintiff was directed only to the second paragraph thereof and, consequently, only such paragraph need be summarized.

The defendant alleges therein that the plaintiff is a skilled and experienced carpenter and has been for many years; that the defendant desired to construct a large dairy barn and employed and placed plaintiff in complete charge of the construction thereof and authorized the plaintiff to employ the labor and purchase the materials necessary for the construction of the barn; that it was orally agreed between the plaintiff and the defendant that the plaintiff should act as foreman, superintendent and general supervisor and also perform services as a carpenter; that the plaintiff agreed to and did furnish all the tools necessary for the use of himself and others; that it was almost impossible to employ skilled labor and that the plaintiff requested the defendant to furnish the named coservant McDowell and that thereafter such servant worked entirely under the supervision and direction of the plaintiff; that after McDowell was employed he was "laid off" and paid in full by the defendant at the direction of the plaintiff; that later the plaintiff requested that McDowell be reëmployed and again worked under the direction of the plaintiff until the plaintiff was injured; that the plaintiff had full knowledge of the physical impairment of McDowell. The answer further alleges that the gin pole and the derrick referred to in the petition were constructed by the plaintiff; that the block and tackle and rope used thereon were the property of the plaintiff; that such instrumentalities had been used during the construction of the barn and in the placing of many girders in place previous to the time described in the petition; that the defendant never went to work as a laborer in any capacity; that the defendant merely stopped at the construction work on the afternoon of the day on which the accident occurred and that the plaintiff requested the defendant to assist McDowell in pulling on the rope, thereby raising the girder; that the defendant took hold of the rope as requested by the plaintiff and continued to hold on to the same as so requested and that while defendant and McDowell were holding the rope the plaintiff walked under the girder and when the plaintiff had reached a point under the same the knot, which the plaintiff had tied in the rope on the block and tackle, became untied and the girder dropped, causing the injury to his leg. The answer further alleges that plaintiff did not use and operate the derrick and gin pole in a workmanlike manner; that the plaintiff was careless and negligent in walking under the girder; that he could have avoided the injury to himself by walking around the same. The

amended answer further reasserts that the plaintiff is not entitled to recover for the following reasons: (1) That plaintiff was the owner of the block and tackle and rope and was the one who had constructed the derrick and gin pole; that plaintiff had tied the knot which became untied and that plaintiff, in accepting the employment and the supervision of the construction of the barn, assumed the normal hazards and risks incident to the construction of the barn and that such risks were fully known and recognized, including the risk incident to the falling of the girder; (2) that the injury was not caused through any negligence of the defendant but was due to an accident and a condition over which defendant had no control, to wit: The failure of the knot in plaintiff's rope which plaintiff had tied and that, therefore, insofar as the defendant was concerned, the injury to the plaintiff was the result of an unavoidable accident; (3) that the plaintiff assumed the risks of the acts of his coservant McDowell; (4) that the injury received by the plaintiff was caused by his own negligence in walking under the girder while it was suspended in the air; (5) that plaintiff's injuries were caused by his own carelessness by directing the parties pulling the rope to stand under the gin pole rather than to stand opposite and away from the same; and (6) that plaintiff's own carelessness and negligence were the proximate cause of the injury. The third paragraph of the amended answer consists of a general denial of all allegations in the plaintiff's petition except such as are admitted.

The original answer filed by the defendant was attacked by plaintiff first in a motion for an order requiring the defendant to elect between inconsistent defenses, which was overruled. The plaintiff also filed a motion to strike many allegations set forth in paragraph two of the original answer, and a motion to make such answer more definite and certain. The district court overruled the motion to make more definite and certain and sustained the motion to strike in certain particulars and overruled it in all other respects. We will not prolong the opinion by setting forth even the substance of the respective motions because the motion to strike only certain portions from the answer in this case was not tantamount to a demurrer. Therefore, the trial court's rulings on the motion to elect, the motion to make definite and certain and the motion to strike are not final and appealable orders. For such reason, even though the plaintiff sets forth the asserted errors in the trial court's rulings on the motions in his specifications of error, we cannot consider

them in this case except for the limited purpose of their possible effect upon the demurrer. (See *Mead v. City of Coffeyville*, 152 Kan. 799, 801, 107 P. 2d 711.) In connection with the motion to elect between asserted inconsistent defenses, it may be observed that the applicable statute, G. S. 1935, 60-710, provides that "The defendant may set forth in his answer as many grounds of defense, counterclaim, set off and for relief as he may have . . ." It is only in cases wherein defenses are so inconsistent that the proof of one disproves the truth of the other that it is proper for a trial court to require defendant to elect as between the defenses in advance of the introduction of evidence. (See *Pinegar v. Webster*, 145 Kan. 44, 64 P. 2d 546; and see, also, *Drewicki v. Fidelity & Guaranty Fire Corp.*, 157 Kan. 569, 142 P. 2d 806, and *Phillips v. Hartford Accident and I. Co.*, 157 Kan. 581, 142 P. 2d 704.) In order to avoid prejudicing the parties, we are deliberately refraining from expressing an opinion as to whether the defenses pleaded in this case are so inconsistent as to justify the trial court in ever requiring the defendant to elect. But it is apparent that the trial court's ruling on the pleadings in such respect may not necessarily be a final ruling and, therefore, it is not subject to review by this court. Rulings on motions to make definite and certain and to strike ordinarily rest in the sound discretion of the trial court and will not be considered upon appeal unless the rulings in effect determine finally the results reached in the various actions. (See *Nardyz v. Fulton Fire Ins. Co.*, 151 Kan. 907, 101 P. 2d 1045, and cases therein cited; also, *Estes v. Tobin Construction Co.*, 155 Kan. 564, 127 P. 2d 720; *Estes v. Tobin Construction Co.*, 159 Kan. 322, 153 P. 2d 939; and *Wharton v. Zenger*, 162 Kan. 69, 174 P. 2d 103, in which case it was held that the motions to strike were not the equivalent of a demurrer.) Extended consideration of the motions filed by the plaintiff in the present case convinces us that the rulings thereon did not come within the exceptions referred to and, consequently, no appeal therefrom can be made to this court.

The foregoing disposes of all of plaintiff's specifications of error except the fourth, which pertains to the asserted error in overruling the plaintiff's demurrer to the second paragraph of the defendant's amended answer. It is unnecessary to give prolonged consideration to the demurrer to the second paragraph of the amended answer because such paragraph expressly pleads, among other matters, that the plaintiff had tied the rope which became untied and caused the

injury ·to the plaintiff and that, therefore, the plaintiff's negligence was the proximate cause of the accident. Counsel for the plaintiff insist that the statement is inconsistent with other matters pleaded in the answer but the question of inconsistent defenses cannot be raised by a demurrer. Such has been the rule since the opinion in · *Munn v. Taulman,* 1 Kan. 254, was written. Later, Mr. Justice Brewer, in 1872, wrote the following in the court's opinion in *Larimer v. Kelley,* 10 Kan. 298:

"Such objection cannot be raised by demurrer. The question on demurrer is whether this defense be sufficient; not whether it contradicts or is inconsistent with some other." (p. 306.)

In the course of the ·years which have followed the legislature has not seen fit to ·change the rule. · (See G. S. 1935, 60-717.) The rule was followed in the comparatively recent case of *Herd v. Estes,* 154 Kan. 316, 118 P. 2d 575, the syllabus of which reads as follows:

"The fact that an answer and cross petition commingle two inconsistent defenses to the cause of action stated in the petition is not sufficient ground for sustaining a demurrer thereto."

The opinion in the last-cited case contains some comment indicating that the rule which prohibits ·the. question of inconsistent defenses being raised on a demurrer may be affected by the filing of preliminary motions requiring the defendant to elect as between inconsistent defenses. It should be observed, however, that there is a distinction between a commingling of theories in a petition and alleging inconsistent defenses. The distinction clearly arises by reason of our controlling statutes. Our statute pertaining to petitions (G. S. 1935, 60-704) reads:

"The petition must contain: . . . *Second.* A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition."

The statute pertaining to the grounds of a demurrer to a petition (G. S. 1935, 60-705) provides:

"The defendant may demur to the petition only when it appears on its face, either: . . . *Fourth,* that several causes of action are improperly joined."

Statutory provisions relative to an answer and a demurrer thereto are quite different. As hereinbefore set forth, G. S. 1935, 60-710, specifically provides that the defendant may set forth in his answer as many grounds of defense as he may have. The statute pertaining to demurrers to answers (G. S. 1935, 60-717) provides that the pleader "may demur to one or more of such defenses set up in the

answer, and reply to the residue." Consequently, a demurrer to an answer predicated upon the contention that the answer contains inconsistent defenses is not authorized by the statute. And it, also, follows that rules pertaining to strict construction of a petition upon consideration of a demurrer filed after the pleader has successfully resisted a motion to make the petition more definite and certain or a motion to elect as between inconsistent or confusing theories have no application in cases wherein motions to elect between asserted inconsistent defenses have been overruled. The general rule is to the effect that each defense shall be regarded as if it stood alone in the same manner as if it were the sole defense and should be complete in itself, unless by distinct and intelligent reference it may be connected with facts stated elsewhere in the answer. (Dassler's Kansas Civil Code, 2d ed., p. 263, § 3, and cases therein cited.) Since our applicable statute permits inconsistent defenses to be alleged, the overruling of a motion to elect between asserted inconsistent defenses cannot affect the sufficiency of the separate defenses for construction purposes. The foregoing disposes of the plaintiff's appeal. As before stated, the trial court's rulings on the motion to strike, the motion to make definite and certain, and the motion to elect were not appealable orders in this case. The trial court's order overruling the demurrer to the defendant's amended answer was correct. It is therefore affirmed.

The questions presented by the defendant remain for consideration. In connection with the oral argument in this court, an inquiry was made by the court which raised for consideration the contention now asserted by the defendant that the third amended petition discloses that the plaintiff's cause of action, if any, arose under the workmen's compensation act and that, therefore, the district court did not have jurisdiction and that consequently, this court, upon appeal, does not have jurisdiction. Supplemental briefs upon the question have been supplied by counsel for respective litigants. If the plaintiff's amended petition conclusively develops that the plaintiff's proper remedy was to pursue his rights under the workmen's compensation act, then the contentions of the defendant as to jurisdiction are sound. (*Jennings v. Kansas Power & Light Co.*, 152 Kan. 469, 105 P. 2d 882.) Additional examination of the petition under consideration discloses clearly that the plaintiff was engaged as a carpenter in the construction of a large dairy barn, which was 40 by 100 feet in its over-all dimen-

sions; that such work required the raising of a girder, weighing about 1,500 pounds, by means of a derrick and gin pole, and further that the operation thereof at the time the girder fell was within the control of the defendant. G. S. 1935, 44-507, provides in its last paragraph that the workmen's compensation act applies to ". . . building work without regard to the number of workmen employed or the period of time employed." "Building work" is defined by G. S. 1935, 44-508, as follows:

"(f) 'Building work' means any work in the erection, construction, extension . . . of any building or structural appurtenances."

We have no hesitancy in holding that the allegations of the petition establish that the plaintiff was engaged in building work as defined by the statute. The question remains, however, whether the defendant was necessarily operating within the provisions of the workmen's compensation act in such manner that he became liable, under the act, to pay compensation for accidental injuries received by his employees in the course of their employment. The plaintiff contends that the third amended petition reveals the defendant was not operating under the workmen's compensation law because the fourth paragraph of the pleading alleges that the defendant was engaged in agricultural pursuits. The paragraph referred to reads: "That defendant is the owner of a large dairy and stock farm located in Labette county, Kansas, near the city of Parsons. Said farm at all times mentioned herein was operated by said defendant." The plaintiff, therefore, asserts that G. S. 1935, 44-505, is applicable and controlling. Such statute reads, in part, as follows:

". . . Agricultural pursuits and employments incident thereto are hereby declared to be non-hazardous and exempt from the provisions of this act . . ."

Thus, it will be seen that we have before us the question whether a dairy farmer, or any other farmer, engaged in building a large barn on his farm, necessarily must be operating under the workmen's compensation act. The plaintiff relies upon *Peters v. Cavanah*, 132 Kan. 244, 295 Pac. 693. In the cited case the defendant was engaged principally in the business of bridge and road building and while so engaged had elected to come under the workmen's compensation act. The defendant also owned a farm on which a hedge fence was being pulled out at the time the accident occurred. In connection with such work the farm tenant's son was killed

while helping to operate the machinery used in connection with the hedge pulling. The opinion holds that the work being done was farm work and that the defendant was exempt from the operation of the workmen's compensation act. Obviously, the decision is not controlling because it cannot be said, in the instant case, that the plaintiff was clearly injured in doing farm work as distinguished from "building work" as defined by the workmen's compensation act.

The defendant, in the present case, relies upon *Raynes v. Riss & Co.,* 152 Kan. 383, 103 P. 2d 818. The principal question decided in such case was whether the injured employee was working for an individual or for the defendant corporation upon which he had served his claim for compensation. The agricultural feature of the present case was not involved and the cited case is not controlling. The defendant does not contend that the building of the barn was not incident to the agricultural pursuits of the defendant.

We are of the opinion that decision upon the question under consideration must be reached by application of the rule distinguishing between occasional work and the regular work of an employer. Regular work implies that the employer is shown to have been devoting a substantial amount of his time and labor to the work as a part of his trade or business. In *Setter v. Wilson,* 140 Kan. 447, 37 P. 2d 50, we held:

"There can be no question that the work being done was 'building work' as defined by the statute (R. S. 1933 Supp. 44-508, subdiv. f), and that where the work is 'building work' the act applies regardless of the number of employees (R. S. 1933 Supp. 44-507) if the facts otherwise bring the matter within the terms of the act . . . .

"While the statutes of some states make exceptions and provisions as to casual employment, our statute does not. The word 'workman,' as defined by R. S. 1933 Supp. 44-508 (i), covers the workman in this case. The definition of 'employer' (same section [h]) merely states who is included within the term, and does not otherwise define it. The words 'employment' and 'employer' are to a certain extent defined and their meaning may be determined from the context of other portions of the statute. In R. S. 1933 Supp. 44-505 it is stated: 'That this act shall apply only to employment in the course of the employer's trade or business in the following hazardous employment,' etc., and in R. S. 1933 Supp. 44-503, the act states: 'Where any person . . . . undertakes to execute any work which is a part of his trade or business,' etc. It would thus appear that in order for the act to apply, the employment must be in the employer's trade or business." (p. 449.)

In the last-cited case the building work was being done in behalf

of the owner of a building. We held that the evidence failed to disclose that the owner of the premises being repaired was habitually devoting a substantial amount of time and labor to the management of the building work and that, therefore, the owner was not engaged in the trade or business of building as contemplated by the legislature. Consequently, the right to recover compensation was denied. It is possible, of course, that an employer may engage in more than one trade or business. In such a case it is not necessary, in order to fix liability, that the employer be engaged exclusively in one of the hazardous employments covered by the workmen's compensation act. See *Shrout v. Lewis,* 147 Kan. 592, 77 P. 2d 973, from which the following is quoted:

"In order to bring an employer within the act it is not enough that the work at which the laborer is employed is covered by the act, but it is also necessary that the work shall be a part of his employer's trade or business. [citing cases] In other words, it is the purpose of workmen's compensation acts to place the burden of compensation for accidents to employees upon the industry rather than upon the individual employer." (p. 594.)

It does not appear in the present case from the amended petition that the defendant habitually was giving a substantial part of his time and labor to the construction of barns or other structures. To the contrary, as hereinbefore set forth, the amended petition alleges, in substance, that the regular trade or business of the defendant was the operation of a dairy and stock farm. The petition refers to the building of only one barn and it may be fairly implied that the building of such barn was incident to the ordinary and regular agricultural pursuits of the defendant. The rule announced in *Setter v. Wilson,* supra, was approved and followed in *Martin v. Craig,* 148 Kan. 882, 84 P. 2d 853. We are of the opinion that the amended petition does not disclose that the plaintiff and the defendant necessarily were operating under the workmen's compensation act and that, consequently, the district court had jurisdiction of the controversy.

The final question presented by the defendant is whether the trial court, in considering the plaintiff's demurrer to the defendant's amended answer, should have reconsidered the defendant's demurrer to the plaintiff's third amended petition. Counsel for the defendant contend that a demurrer to an answer may be carried back to a petition and the sufficiency of the petition may be tested upon the demurrer to the answer although the demurrer to the petition pre-

viously had been considered and overruled. In support of such contention they cite *Bartholomew v. Guthrie,* 71 Kan. 705, 81 Pac. 491; *Marney v. Joseph,* 94 Kan. 18, 145 Pac. 822; and *Beeler & Campbell Supply Co. v. Warren,* 149 Kan. 135, 86 P. 2d 482. The cited cases support the contention of the defendant but we cannot consider the application of the rule in this appeal. The record discloses and the defendant concedes that no appeal was perfected to this court upon the original ruling made by the trial court on defendant's demurrer to the plaintiff's third amended petition. The defendant asserts, however, that it will save all of the parties in the case further litigation if this court will consider the merits of the defendant's demurrer. We cannot do so. The defendant not only did not appeal from the trial court's ruling on his demurrer but also did not give any notice of a cross-appeal as required by G. S. 1945 Supp., 60-3314, after the plaintiff had appealed from the order overruling the demurrer to the amended answer. Consequently, the defendant has not appealed in any manner from any rulings made by the trial court. The result must follow that we do not have any of such rulings before us for review. If the defendant had given notice of a cross-appeal and then urged in this court that the demurrer to the amended answer reopened the question whether the third amended petition alleged a cause of action, a different question might be presented. We cannot pass upon such question in this case, however, because of the absence of the cross-appeal. The only questions properly before us in this appeal are the district court's ruling on the demurrer to the amended answer and the trial court's jurisdiction. As hereinbefore stated, the trial court had jurisdiction of the controversy and its ruling upon the demurrer to the amended answer is affirmed.