Argued January 20, reversed March 10, 1954

# STATE INDUSTRIAL ACCIDENT COMMISSION
## *v.* GARREAU
267 P. 2d 661

*George W. Mead,* of Portland, argued the cause and filed briefs for appellant.

*Ray H. Lafky,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Don Parker, Assistant Attorney General, of Salem.

WARNER, J.

This is an action brought by the State Industrial Accident Commission (hereinafter called the Commission) under the Workmen's Compensation Law (ORS 656.002 to 656.590) to recoup from the defendant, Edwin Joseph Garreau (hereinafter called the employer), the amount of monies it had expended on account of injuries received by one Miller while in defendant's employ. It is predicated upon the provisions of ORS 656.054 which confer upon the Commission the right to reimbursement from an employer engaged in a hazardous occupation for outlays made in behalf of one of his workmen arising out of accidental injuries received in the course of employment, when the employer failed to give the notices required by the compensation act. From a judgment in favor of the Commission, the defendant employer appeals.

The only issue presented to us for solution is whether the defendant was, in fact, engaged in a hazardous occupation at the time of the accident.

The defendant made the following admissions:

"(1) That the employee was injured while working for the Appellant.

"(2) That the Appellant, the employer, had not given the Commission notice of his engaging in a hazardous occupation prior to the time of the injury.

"(3) That a claim had been duly filed by the injured workman with the Commission and subsequently paid by it pursuant to an award.

"(4) That the amount which the Respondent seeks to recover from the Appellant has been paid to or on account of the injured workman."

The evidence consists solely of two exhibits—photographs of the compressor and the hoist hereinafter referred to—and such facts as were stipulated by the parties. No witnesses were called.

The foregoing admissions, the exhibits and the stipulations which follow constitute our only information upon which to predicate our conclusions. We present the stipulations *haec verba*. The first stipulation is garnered from the following:

"MR. MEAD: Well, I imagine that Mr. Parker might have some views as to what he deems essential to his case, but I would think, and we are very agreeable to stipulating that in the operation of the service station we have a small compressor, a picture of which has been taken and which is available and can be introduced in evidence.

"THE COURT: That's powered by electricity?

"MR. MEAD: Powered by electric motor, and that that compressor is connected by hoses to an

air hose which is used for the purpose of filling automobile tires at a service station, and that it's likewise connected by hose *to a hoist for the purpose of hoisting automobiles for greasing.* Now those are all the facts, I guess, that are material in so far as the State is concerned.

"MR. PARKER: That's right, your Honor." (Italics ours.)

The second stipulation is gathered from the statements and representations of counsel reading:

"MR. MEAD: We would like to produce a witness to make a showing as to the nature of the business that he is running there, but it is entirely possible that counsel will stipulate that.

"MR. PARKER: I will stipulate.

"MR. MEAD: And if that is the case, I would like for the record to show that the defendant at the time of the injury, namely, March 8, 1951, was operating a gasoline filling station and parking lot business in the city of Portland, Multnomah County, Oregon; that he had in his employ at that time the workman who was injured, whose duties consisted entirely of those duties usually engaged in by a service station operator, that is to say, the parking of automobiles and sale of gasoline and petroleum products and the sale of batteries, tires, and miscellaneous items of merchandise usually sold in gasoline filling stations, and *in the greasing and lubricating of automobiles*; that the injured workman was injured while in the course of his employment in attempting to install on an automobile of a customer a set of tire chains belonging to the customer, and that he had jacked up the customer's automobile by a mechanical jack furnished to him by the customer, and that the automobile slipped off the jack by reason of the fact that he had not blocked up the car or taken steps to prevent it from slipping; *that in the operation of the defendant service station, no automobile repair work*

*or work shop was engaged in*; and that the sole business of the defendant was, as has been stated, the sale of those items normally sold in gasoline filling stations.

"I think those are the essential facts in so far as the defendant is concerned, and Mr. Parker, are you willing to stipulate to those facts?

"MR. PARKER: I will, your Honor." (Italics ours.)

The making of the last stipulation was followed almost immediately by this colloquy between the court and counsel for the defendant in the presence of plaintiff's counsel, who did not object to the constructions given by Mr. Mead:

"THE COURT: * * * may I ask, Mr. Mead, with respect to this stipulation—not meaning to infer that I consider it material, but it occurs to the Court that it might have a bearing—am I correct in assuming that your stipulation would indicate that there was maintained on the premises a hydraulic hoist which was used in connection with—

"MR. MEAD: *Lubricating of automobiles.*

"THE COURT: —lubricating of automobiles and installation of chains?

"MR. MEAD: No, it was not, your Honor, *merely for the lubrication of automobiles,* and that this workman was not injured in connection with the operation of any of the equipment which the State claims was hazardous, but in the installation of a set of automobile chains on a customer's car by means of the use of the jack furnished to him by the customer.

"THE COURT: Well, I assumed that your stipulation, where you indicated that the defendant sold items incident to the operation of a filling station, that he did sell chains.

"MR. MEAD: Yes, that's correct." (Italics ours.)

As gleaned from the stipulations, the pertinent and controlling facts are that the employer had on his premises power-driven machinery, represented by an automobile hoist operated by an air compressor deriving its propulsion in turn from an electric motor. We are told by the briefs, but not the stipulations, that the hoist could lift up to two tons. We also learn from the facts that the use of this hoist was limited to elevating motor vehicles for the purpose of "greasing and lubricating" and that "no automobile repair work or work shop was engaged in". With these fixed boundaries of the employer's activities so clearly spelled out, it is not within our province to speculate upon what other uses, if any, a hoist of such size and power might have for one engaged in the business of operating a service station. We must confine ourselves to the exactitude of the facts as presented.

Taking the motor-driven unit alone, we have no hesitancy in saying that it falls within the purview of ORS 656.084, defining hazardous occupations, if we can also find that the hoist was operating in a "workshop" as defined by ORS 656.002(16). The part of ORS 656.084 pertinent to our consideration reads: "* * * The hazardous occupations to which ORS 656.002 to 656.590 are applicable are as follows: (a) When power-driven machinery is used, the operation of * * * workshops."

We now turn to ORS 656.002(16) where we find the statutory definition of "workshop" in these words:

"'Workshop' means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale

or otherwise any article or part of any article, machine or thing, over which plant, yard, premises, room or place the employer of the person working therein has control.''

■ It is obvious, therefore, that it is not alone the presence of a power-driven machine on a given premises that legally designates an employer's occupation as ''hazardous'' or his place of business as a ''workshop'', nor is its size, its power, its capacity or its potentialities as an instrumentality of danger to life and limb any part of such determination. The law supplies other criteria which must be concurrently present before those defining terms can be successfully applied. It must also appear that such a machine so located and propelled, and when employed in conjunction with manual labor, is at times engaged ''by way of trade for gain or otherwise'' for the purposes and uses delineated in ORS 656.002(16), i.e., in ''the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale or otherwise'' some article or part of any article.

■ The rule of liberal construction applied to statutes of the kind under consideration does not impose upon us the duty to give tortured or unusual definitions to words and phrases which in common and ordinary parlance have long enjoyed and are limited to generally accepted meanings, particularly when applied to such commonplace and frequently recurring kinds of work as are enumerated in ORS 656.002(16), thereby including in the ambit of their definition activities and matters not theretofore comprehended thereby.

We have not been favored with any citations proximating the facts which the case at bar presents or arising under statutes similar to our own, nor has our

own industry been able to supply any, warranting the conclusion that the greasing or lubricating of an automobile while elevated on a hoist of the kind used by the employer in this matter can be said to be a part of "the process of making, altering, repairing * . * * or adapting for sale or otherwise any * * * machine or thing, over which * * * the employer of the person working therein has control." To hold otherwise would be to give such commonplace words and phrases a meaning beyond the boundaries of their generally accepted connotation and thereby defeat what we conceive to be the legislative intent.

■ Constrained as we are by the precise and limited facts established by the record, we have no alternative but to conclude that the defendant employer was not maintaining a "workshop" as defined by ORS 656.002 and, therefore, not engaged in a "hazardous occupation" at the time his employee sustained the accident provocative of the instant litigation.

The judgment of the circuit court is reversed.