No. 46,720

ROBERT C. EINFELDT, *Appellant,* v. LEO AUGUSTINE d/b/a LEO'S
TEXACO, and/or TEXACO, INC., and TRAVELERS INSURANCE COM-
PANY, *Appellees.*

(498 P. 2d 43)

Opinion filed June 10, 1972.

*George E. McCullough,* of the firm of McCullough, Wareheim & La Bunker,
of Topeka, argued the cause and was on the brief for the appellant.

*Constance M. Achterberg,* of Salina, argued the cause and was on the brief
for Leo Augustine, d/b/a Leo's Texaco, appellee. *David W. Buxton,* of the
firm of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and
*Donald R. Newkirk,* of the same firm, was with him on the brief for Texaco, Inc.
and Travelers Insurance Company, appellees.

The opinion of the court was delivered by

FONTRON, J.: This is an action for compensation claimed to be
due under the Workmen's Compensation Act, hereafter referred
to as the Act. The trial court denied compensation and the work-
man has appealed.

The claimant, Robert C. Einfeldt, formerly resided and was
employed in the state of Colorado, where he developed back
trouble and underwent three laminectomies and one spinal fusion.
The latter operation failed to produce a union, leaving the claimant
with the condition known to the medical profession as pseudo-
arthrosis. Mr. Einfeldt was given a rating of 7½% permanent dis-
ability by the Colorado authorities acting under the compensation
law of that state.

Upon coming to Kansas in May of 1969, the claimant shortly

secured employment as an attendant and mechanic in a Salina filling station operated by Leo Augustine dba Leo's Texaco. The record shows that on September 8, 1969, Mr. Einfeldt stepped on some grease as he walked across the floor after putting a battery charger away, as a result of which he slipped and fell, striking his back on the lip of a grease lift which extended some eight inches above the floor. The present claim for compensation is an out-growth of this fall, and claimant has joined as respondents both Mr. Augustine, the operator of the station, who was not insured, and Texaco, Inc., the lessor of the premises, together with its in-surance carrier.

In October following his fall, the claimant underwent a second spinal fusion which did not result in the desired union, and a third operation was performed in December, 1969, the results of which are not disclosed in the record. There is medical testimony, how-ever, that claimant was totally disabled at the time his claim was heard before the workmen's compensation examiner in April, 1971.

On respondents' appeal from the award which the examiner entered in claimant's favor, and which was approved by the work-men's compensation director, the district court found that the claimant was totally disabled as a result of the September 8 accident for a period of only one week, and that any additional disability was not the result of his fall in the filling station, nor was the fall an aggravation of his pre-existing physical condition. This finding is challenged by the claimant in this appeal. The dis-trict court also concluded as a matter of law that the claimant was not engaged in hazardous employment; that Leo's Texaco filling station was not a "factory or machine or repair shop" within the provisions of K. S. A. 44-505 and 44-508 (*b*), and that the re-spondents were not governed by the Workmen's Compensation Act. These conclusions are likewise challenged on appeal.

We shall first turn our attention to the claimant's contention that the filling station business of the respondent, Leo Augustine, comes within the purview of and is covered by the Workmen's Compensation Act, and that the trial court erred in concluding otherwise. His argument boils down to this: (1) A "factory" is one of the hazardous employments to which the Act applies by virtue of its enumeration in K. S. A. 44-505; (2) a "factory" is defined in K. S. A. 1971 Supp. 44-508 (*b*) as being "any premises wherein power is used in manufacturing, making, altering, adapting,

ornamenting, finishing, repairing or renovating any article or articles for the purpose of trade or gain of the business carried on therein, including expressly any . . . machine or repair shop. . . . ", (3) a portion of the business conducted by Leo in the operation of his filling station is the mechanical repair of sick and ailing motor vehicles in which power equipment is used; (4) ergo, Leo's Texaco filling station is a factory and hence is covered within the Act.

The trial court, however, concluded that Leo's Texaco filling station was not a factory or machine shop within the purview of the Act, and in connection with this conclusion made the following finding of fact:

"The principal activities of Leo's Texaco was the retail sale of oil, gas, tires, accessories and other merchandise; and the mechanical and repair work performed by claimant and other employees was of a minor and inconsequential nature, clearly incidental to the principal business of respondents. Only 6½ percent of respondent's gross income from the station for the year 1969 was attributable to labor consisting of service calls, tire repair, lubrication, washing and minor tune-up, and 93½ percent from sales of products and merchandise."

The evidence shows that at the time of the accident, Leo's Texaco had two full-time and two part-time employees, their primary duties being to work the drive, i. e., wait on the trade, dispense gasoline, change the oil and lubricate and otherwise service customers' automobiles. Only Leo and the claimant were experienced mechanics, although the other employees also performed minor repair work. The repair portion of Leo's Texaco business consisted of minor tune-ups, such as changing plugs and points, working on shock absorbers, brakes and exhaust systems and doing tire repairs. Power equipment consisted of an air operated hoist or grease rack, an air operated tire machine, an air operated muffler gun or metal cutter and a small ¼ inch electric drill.

Basically, there is no factual dispute of consequence as to the nature or extent of the business carried on by Leo's Texaco filling station or as to the method of the station's operation. The focal question, as the claimant succinctly points out in his brief, is whether the respondents operate a factory within the definition of the Act.

Claimant takes the position, which is stoutly contested by the respondents, that so long as any part of the business done by a filling station consists of vehicular repairs, the station thereby becomes a factory within the meaning of the Act, and that the percentage of

its income which may be attributed to labor in the making of car repairs is entirely irrelevant. The respondents point out, however, that in this case Leo's Texaco is essentially a retail establishment; that as found by the trial court (on what we believe to be substantial competent evidence), the principal activity conducted at the filling station was the sale of gas, oil, tires and accessories, while the repair work performed was but a minor and incidental part of the overall operation.

This court has never been confronted with the exact factual situation presented by the present case. We have however, on occasion, drawn a distinction between occasional work and regular work when it came to matters relating to workmen's compensation, and we have said that the regular work of an employer carries the implication that the employer was devoting a substantial part of his time and labor to the work as a part of his trade or business. (*Giltner v. Stephens*, 163 Kan. 37, 46, 180 P. 2d 288; *Setter v. Wilson*, 140 Kan. 447, 449, 37 P. 2d 50; *Martin v. Craig*, 148 Kan. 882, 84 P. 2d 853.) Although those cases are factually dissimilar from the case at bar, they generally accord with the statement found in 1 A Larson's Workmen's Compensation Law, § 55.21, p. 983:

"It is the major function or functions of the business which characterizes it as hazardous or nonhazardous, not isolated and insignificant features or incidents. . . ."

Judicial decisions having to do with the application of state compensation acts to the filling station business are rare indeed. They emanate almost entirely from our neighbor to the south, the sovereign state of Oklahoma, where the definition of a "workshop" is much the same as "factory" under our Act. In pertinent part, the Oklahoma statute reads:

" 'Workshop' means any premises, yard, plant, room or place wherein machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise, or incidental to the process of making, altering, repairing, . . . any article, or part of article, machine or thing over which premises, room, or place the employer of the person working therein has rights of access or control." (85 Okl. St. Ann., § 3 [11].)

It is noted that in the Oklahoma statute the term "machinery" is used in place of "power," which is found in ours. The disparity is minimized, however, by this court's decision in *Menke v. Hauber*, 99 Kan. 171, 160 Pac. 1017, which construed the word "power" as meaning "mechanical power."

A series of Oklahoma cases has construed the Act of that state.

In *Skelly Oil Company v. Waters,* 348 P. 2d 320 ( Okla. ) the claimant was the manager of a Skelly station who had injured his back in attempting to raise the hood of a car. In the course of his work he did minor repairs such as replacing points, adjusting brakes and installing batteries, and he employed a hydraulic hoist to assist him in those operations. In an opinion denying recovery under the Oklahoma Workmen's Compensation Act, the Supreme Court held that Skelly business was the sale of petroleum products and accessories to the public and that use of the hydraulic lift was but a means of providing more efficient service.

The holding of the Oregon court in *State Ind. Acc. Com. v. Garreau,* 200 Ore. 594, 267 P. 2d 661 is quite similar to that found in *Skelly.* In the Oregon case, a filling station employee was injured when an automobile fell off a jack while he was in the process of installing tire chains. The station was equipped with a hoist operated by an air compressor which drew its power from an electric motor. The hoist was used in connection with the lubrication and greasing of cars. Compensation was denied on the ground that the filling station was not a workshop.

The limits of the *Skelly* case were enlarged somewhat in *Cross v. Brown,* 363 P. 2d 935 ( Okla. ). The injury in this case occurred when a filling station attendant attempted to light a cigarette while repairing a leak in the gas tank of a car he was washing. Station equipment consisted of gasoline pumps, necessary tools and equipment for minor repairs, an appliance for breaking rims from tires, an electric buffer to buff inner tubes, air compressors for lifting a hoist, and a welding torch to melt lead off battery cables. The Oklahoma court held the business was not a workshop in which machinery was used.

Quite in point is the more recent case of *Woods v. Perryman,* 452 P. 2d 588 ( Okla. ), in which a filling station employee sought compensation for back injuries sustained while helping unload oil drums from a truck. The trial court entered an award based on a finding that a "repair shop" was operated in connection with the filling station. In this case the employer, in addition to operating a retail filling station for the sale of petroleum products, sold accessories and operated a front-end alignment machine. The station also had other equipment: an air operated hoist, a tire machine for changing tires, a tire balancer and a small brake lathe. Small tune-up jobs

were performed, such as installing plugs and points, and tail pipes and mufflers were installed, but no major overhauling was done. Approximately 97.05% of the revenues derived from the station came from the sale of petroleum products, tires and accessories; only 2.95% came from repairing motor vehicles. Under these circumstances, the Oklahoma Supreme Court reversed the trial court, holding in effect that the employer was not engaged in hazardous employment within the meaning of the Oklahoma statute and that the filling station was not a workshop wherein machinery was employed.

Applying the rationale of the Oklahoma decisions to the facts of the present action, we are of the opinion that the trial court did not err in concluding, from the facts it found to exist, that Leo's Texaco was not a factory within the definition set out in the Act and that its operation was not one of the hazardous occupations covered by the Act. The filling station was operated essentially as a retail sales business in which petroleum products, tires and other accessories were sold to its customers and where its customers' cars were serviced. No body work or major repairs were accomplished. Power tools were few: a hoist, a tire machine and a muffler gun, all operated by air, and a small electric drill. The station's income attributable to labor appears minimal—a bare 6½%—and not all of that was derived from repairs.

In coming to our decision in this case, we do not imply that a filling station may never fall within the category of a "factory" as defined in the Act. Our decision goes no further than the limits set by the evidence adduced in this case and the findings of the court predicated thereon.

We have not overlooked the decision of this court in *Thorp v. Victory Cab Co.*, 172 Kan. 384, 240 P. 2d 128, on which the claimant relies. However, we find it inapposite. The employer in that case operated a shop for the repair and servicing of its taxicabs, its trucks, the cars of its officers and the cars of other persons to whom the company was liable for damages. The shop was equipped with power machinery, (not described in the opinion), and other tools and devices suitable for the purposes mentioned. The company also operated a spray gun for painting cars. The mechanics employed in the repair shop were expected to service taxicabs on the road when they needed repairs or ran out of fuel. On one such trip the claimant was injured when he was struck by a car. This court, although remanding the case on a different

point, held in effect that under the circumstances which had been shown, the repair shop operated by the cab company constituted a factory and hence was a hazardous employment within the provisions of the Act. We are not inclined to disagree with that holding, but the situation before the court in that case bears little, if any, resemblance to the circumstances recorded here.

Because of the conclusion we have reached on the coverage aspect of this case we need not determine whether the evidence supports the trial court's finding that claimant's disability did not result from his fall at the filling station and that his pre-existing condition was not aggravated thereby.

The judgment of the court below is affirmed.